# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **MICHAEL ANN LUXON** : <br> 129 E North : <br> Carey, Ohio 43316 : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> : <br> **TEIJIN AUTOMOTIVE** : <br> **TECHNOLOGIES** : <br> 2915 Co Hwy 96 : <br> Carey, OH 43316 : <br> : <br> : <br> : <br> Defendant. : | CASE NO. 3:22-cv-1912 <br><br> JUDGE <br><br> MAGISTRATE JUDGE <br><br><br> **Jury Demand Endorsed Herein** |

## COMPLAINT

NOW COMES Plaintiff Michael Ann Luxon ("Plaintiff") and proffers this Complaint for damages against Defendant Teijin Automotive Technologies ("Defendant").

## THE PARTIES

1. Plaintiff is a natural person residing in Wyandot County, Ohio.

2. Defendant Teijin Automotive Technologies is a Foreign Limited Liability Company doing business in the Northern District of Ohio.

3. Plaintiff was an employee of Defendant as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq* and the Ohio Civil Rights Act, R.C. § 4112 at all relevant times herein.

4. Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*. and the Ohio Civil Rights Act, R.C. § 4112.

## JURISDICTION AND VENUE

5. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and Ohio Laws of Discrimination. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

6. Venue is proper pursuant to 28 U.S.C. §1391, because Plaintiff entered into an employment relationship with Defendant in the Northern District of Ohio, Plaintiff performed her job duties there, and Defendant is doing and has done substantial business in the Northern District of Ohio.

7. Plaintiff has received a Right to Sue from the EEOC, attached hereto.

## FACTUAL BACKGROUND

8. Plaintiff began working for Defendant in or around August 28, 2018 as a Production Operator.

9. In or around July 2021, Defendant assigned Larry McDonald, another production operator, to work alongside Plaintiff roughly two times per week. In or around the end of August 2021, Mr. McDonald was assigned to work with Plaintiff every day. Between September 2021 to the end of October 2021, Plaintiff and Mr. McDonald worked together without issue.

10. On or about November 5, 2021, Mr. McDonald told Plaintiff he possessed the ability to dream about future events and accurately predict that said event will occur.

Mr. McDonald also informed Plaintiff that he was able to see and speak to people who have died.

11. Mr. McDonald proceeded to tell Plaintiff that he could see her deceased son. Mr. McDonald continued to speak about this deeply personal topic in Plaintiff's life, which drove Plaintiff to tears and forced her to leave the work floor.

12. On or about November 9, 2021, Mr. McDonald's harassment towards Plaintiff turned sexual. Each time Plaintiff bent over to reach an item necessary for her job, Mr. McDonald made a moaning noise.

13. While this made Plaintiff uncomfortable, she brushed Mr. McDonald's conduct off and made sure he was away from the press or was facing him when she needed to bend over to reach items near the ground. She hoped this would be a strange, yet isolated, incident.

14. On or about November 29, 2021, Mr. McDonald's sexual harassment of Plaintiff intensified. Mr. McDonald approached Plaintiff, made a "V" with his index and middle fingers, put them to his mouth and stuck his tongue through it.

15. Mr. McDonald's vulgar gesture was meant to convey the act of cunnilingus. Mr. McDonald then said "Let me eat it" and winked at Plaintiff. Plaintiff was extremely uncomfortable and disgusted with his pervasive sexual implications.

16. On or about December 2, 2021, Mr. McDonald began explicitly describing sexual acts to Plaintiff whenever he would squat down to get items from his work bag. Mr. McDonald stuck his tongue out while shaking his head and said, "I can make you scream" and "Why don't you come sit and spin on my table?"

17. Shocked, Plaintiff responded that she was married, and her husband would not appreciate those comments. Mr. McDonald replied "How is he gonna know?"

18. On or about December 3, 2021, Plaintiff approached her local union president, Matthew Brinker, with the intent to report and end Mr. McDonald's persistent sexual harassment.

19. She informed him of what Mr. McDonald was doing.  Mr. Brinker began randomly stopping by Plaintiff's station each day in order to observe how Mr. McDonald acted towards Plaintiff.

20. Mr. McDonald became upset whenever another person, particularly a man, would approach Plaintiff and speak to her. Unfortunately for Plaintiff, this did not curb the harassment, rather it continued to occur on a daily basis.

21. With the Christmas break fast approaching, Plaintiff hoped the holiday shut down would curb his behavior. Again, this did nothing to halt Mr. McDonald's behavior, it only became worse.

22. On or about January 5, 2022, Mr. McDonald began blowing air on Plaintiff's neck and ears every time he would walk behind her. Additionally, Mr. McDonald verbally harassed Plaintiff, saying "Did that give you chills?" "I bet your nips are hard, let me feel?"

23. The next day, Mr. McDonald rubbed up against Plaintiff whenever he had to walk by her and would ask her if she could "feel that" and "You want it, don't you?"

24. On or about January 7, 2022, Plaintiff asserts that Mr. McDonald began hip thrusting in a motion in an attempt to mimic his genitals slapping against his legs. Another Production Operator, Rachael Williams witnessed Mr. McDonald's disgusting

behavior and asked why he was acting like that when he was aware that Plaintiff was married. Plaintiff was thankful that Ms. Williams stayed in close proximity the remainder of the day to watch over her.

25. On or about January 10, 2022, while Plaintiff squatted down to get her supplies off the bottom shelf of her worktable. Mr. McDonald walked over to her station and grabbed her crotch. Plaintiff immediately stood up and said "You need to fucking stop! Do you understand?! Please stop."

26. Shortly after Mr. McDonald's sexual assault of Plaintiff, Plaintiff informed Mr. Brinker that they needed to speak to the Regional Manager of HR, Roxanne Siebeneck. For Plaintiff, the harassment had reached the point where she had to leave work to avoid Mr. McDonald's reprehensible conduct. Mr. Brinker said he would talk to Ms. Siebeneck and get back to Plaintiff with an update.

27. On or about January 17, 2022, Ms. Williams and Jeff Ruch (Production Operator) both witnessed Mr. McDonald blow on Plaintiff's neck. Mr. Ruch told Mr. McDonald "I hope you're respecting this woman." Mr. McDonald replied, "Don't you worry about it."

28. On or about January 18, 2022, Plaintiff took a personal day from work because Ms. Siebeneck had yet to discuss the situation with Plaintiff. At or around 3:00pm the same day, Plaintiff asserts that she was sitting at her dining room table and witnessed Mr. McDonald drive by her house.

29. When Plaintiff returned to work on January 19, 2022, Mr. McDonald told her "I seen you sitting at your table." Stunned, Plaintiff asked "Why you driving by my house?" to which Mr. McDonald replied said "Oh, just a different way to get home."

30. On January 20, 2022, Edgil Bowling (Production Operator) took Plaintiff home from work. As they exited his car, Mr. Bowling witnessed Mr. McDonald drive by and said to Plaintiff "Man, that dude won't leave you alone." Plaintiff replied "I don't know what to do about it, no one will listen to me."

31. On or about January 21, 2022, Plaintiff was summoned to HR in regard to why she was absent on January 18. Prior to discussing anything with HR, Plaintiff requested Mr. Brinker be involved in the meeting. Mr. Brinker, Ms. Siebeneck and Plaintiff discussed the incessant, deplorable behavior from Mr. McDonald. After Plaintiff's summary of events, Ms. Siebeneck told her, "Let me look into this and I will get back to you."

32. To say HR failed to take reasonable steps to mitigate Plaintiff's suffering is an understatement. Even after the meeting, Mr. McDonald's sexual harassment continued on a daily basis. Mr. McDonald would even trade his workstation for another employee's station in order to work near Plaintiff in the event they were not scheduled close to each other.

33. On or about February 26, 2022, at or around 11:30pm, Mr. McDonald sent Plaintiff a message on Facebook messenger asking, "What color you wearing?? PANTIES." Plaintiff responded to Mr. McDonald's message with "Adam (her husband) received the message you just sent me."

34. On or about March 2, 2022, Mr. McDonald approached Plaintiff, upset that she didn't hide his messages from her husband. Mr. McDonald told her "I should have been watching for Adam." Additionally, in order to harass Plaintiff further when

6

Mr. McDonald was unable to do so, he recruited another coworker, Tina Whittaker to bother Plaintiff. Plaintiff reported this to her supervisor, Todd Fagan.

35. Mr. Fagan said, "I know, and it blows my mind Larry (Mr. McDonald) is doing it." Appalled that her supervisor brushed off her assertions, Plaintiff reported Mr. McDonald's continuing conduct and Mr. Fagan's insouciance to her situation to Ms. Siebeneck in HR.

36. On or about March 3, 2022, Plaintiff informed Mr. Brinker that she wanted to file sexual harassment charges against Mr. McDonald. Moreover, Plaintiff requested a workstation location change in order to get away from Mr. McDonald, and now Mr. Fagan, since it had become clear to her that he was not going to protect her.

37. Plaintiff was stationed in the same location for nearly two years but was now forced to request a relocation due to the company's nonaction and inability to deal with Mr. McDonald's relentless abuse.

38. On or about May 31, 2022, over four months after Plaintiff first reported Mr. McDonald's harassment to Ms. Siebeneck, HR concluded the investigative interviews with the last of five witnesses who personally observed the harassment experienced by Plaintiff.

39. Approximately three weeks later, Ms. Siebeneck informed Mr. Brinker that Plaintiff should have told her sooner. The investigation concluded and no further action was taken by the company

40. Defendant moved Plaintiff to a new press on the other side of the building on September 26, 2022, in order to avoid Mr. McDonald. Defendant then moved Plaintiff back to the same side of the building, near Mr. McDonald, on or about October 3, 2022.

41. Plaintiff is still within 200 feet of Mr. McDonald and is forced to look at him throughout the day. Plaintiff still receives feedback from other employees that Mr. McDonald asks others to pray for Plaintiff.

42. Union President Matt Brinker has notified Defendant numerous times that Plaintiff should not be forced to move locations. Specifically, Defendant notified supervisors Mark Spoon, Todd Fagan and head supervisor Dean England.

43. Defendant has not taken any action against Mr. McDonald other than Ms. Siebeneck speaking to Mr. McDonald on or about September 13, 2022. Mr. McDonald was not moved to a different location or otherwise sufficiently reprimanded for his inappropriate conduct.

44. On or about October 13, 2022, Plaintiff was on press 8, roughly 400 feet from press 6, where Mr. McDonald is located. At approximately 8:50 AM, Mr. McDonald left his press to take a break. As he walked past Plaintiff, Mr. McDonald started laughing out loud and shaking his head, all the while staring directly at Plaintiff.

45. Approximately two hours later, at 10:40 AM, the fire alarm sounded for a fire drill. Defendant's building is sectioned off in four different zones so every employee is aware of what door they are to exit in case of emergency. Plaintiff's zone, zone one, consisted of presses one through nine, meaning Mr. McDonald was in the same zone as Plaintiff.

46. As Plaintiff evacuated the building, Mr. McDonald and Ms. Whitaker intentionally walked directly behind Plaintiff. Mr. McDonald and Ms. Whitaker said, loud enough for Plaintiff to hear, "Better have your good sunglasses on to keep you from being blinded from the piece of shit in front of you."

47. When Plaintiff arrived at her assigned rally point, Mr. McDonald stood approximately five feet from Plaintiff and stared directly at her, which made Plaintiff uncomfortable. Ms. Whitaker proceeded to stand roughly ten feet in front of and facing towards Plaintiff, Ms. Whitaker and Mr. McDonald stared at Plaintiff for the duration of the fire drill.

48. Upset, Plaintiff turned around so she was not looking directly at them. During her lunch break, Plaintiff asked Mr. Brinker to speak with her. However, Plaintiff did not have much to say and cried the entire time she was with Mr. Brinker.

49. Plaintiff has attempted to negotiate an amicable resolution with Defendant and Defendant has no interest. Therefore, Plaintiff was forced to file suit while she continues to work there. She cannot quit, as she relies on the income to survive.

## COUNT I - TITLE VII
### Sexual Harassment: Hostile Work Environment

50. Plaintiff reasserts and reincorporates each and every allegation contained in paragraphs 1-49 above as if fully rewritten herein.

51. Defendant engaged in conduct that violates Title VII prohibiting sex discrimination by sexually harassing and assaulting Plaintiff, by creating and encouraging a hostile work environment for Plaintiff based on sex, by refusing to remedy the situation and provide a reasonable and non-hostile work environment when it refused to act to protect her from Mr. McDonald.

52. Plaintiff was subjected to unwelcomed sexual harassment when Defendant's employee Larry McDonald repeatedly harassed her by directing sexual comments towards her and subjecting her to unwelcomed touching and groping of her crotch.

53. Plaintiff reported the sexual harassment to Defendant.

54. The harassment was based on Plaintiff's sex.

55. The harassment unreasonably interfered with Plaintiff's work performance because she had to leave work to distance herself from Mr. McDonald.

56. The harassment was sufficiently severe or pervasive enough to create a hostile or offensive working environment because Plaintiff felt unsafe at work in the presence of Mr. Mc Donald.

57. Defendant knew or should have known of the charged sexual harassment because Plaintiff reported it to Defendant, submitted a statement about the incident to Defendant and Roxanne Siebeneck, HR director, investigated her report over the course of four months and provided Plaintiff with the conclusion that she should have said something sooner.

58. Defendant failed unreasonably to take prompt and appropriate corrective action because it merely instructed Plaintiff to avoid being in the same room as Mr. McDonald and took no other action to discipline him or separate the two for an indefinite period of time.

59. Defendant claims to have informed Mr. McDonald of Plaintiff's complaint on or about September 13, 2022.

60. Defendant put the burden on Plaintiff to avoid her sexual harasser rather than taking appropriate corrective action against Mr. McDonald.

61. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including, but

not limited to, loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

62. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT II- Ohio Civil Rights Act
### Sexual Harassment: Hostile Work Environment

63. Plaintiff reasserts and reincorporates each and every allegation contained in paragraphs 1-62 above as if fully rewritten herein.

64. Defendant engaged in conduct that violates R.C. 4112 prohibiting sex discrimination by sexually harassing and assaulting Plaintiff, by creating and encouraging a hostile work environment for Plaintiff based on sex, by refusing to remedy the situation and provide a reasonable and non-hostile work environment when it refused to act to protect her from Mr. McDonald.

65. Plaintiff was subjected to unwelcomed sexual harassment when Defendant's employee Larry McDonald repeatedly harassed her by directing sexual comments towards her and subjecting her to unwelcomed touching and groping of her crotch.

66. The harassment was based on Plaintiff's sex.

67. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of Plaintiff's employment.

68. Defendant knew or should have known of the charged sexual harassment because Plaintiff reported it to Defendant, submitted a statement about the incident to Defendant and Roxanne Siebeneck, HR director, investigated her report over the course

of four months and provided Plaintiff with the conclusion that she should have said something sooner.

69. Defendant failed unreasonably to take prompt and appropriate corrective action because it merely instructed Plaintiff to avoid being in the same room as Mr. McDonald and took no other action to discipline him or separate the two for an indefinite period of time.

70. Defendant claims to have informed Mr. McDonald of Plaintiff's complaint on or about September 13, 2022.

71. Defendant put the burden on Plaintiff to avoid her sexual harasser rather than taking appropriate corrective action against Mr. McDonald.

72. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to, serious emotional distress and the loss of salary, benefits, and other terms, privileges and conditions of employment for which Defendant is liable.

73. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiff demands:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which the Court deems just and appropriate.

Respectfully submitted,

/s/ *Rachel Sabo Friedmann*
Rachel Sabo Friedmann (0089226)
(*Rachel@TheFriedmannFirm.com*)
Peter G. Friedmann (0089293)
(*Pete@TheFriedmannFirm.com*)
**The Friedmann Firm LLC**
**(614) 610-9757**
3740 Ridge Mill Dr
Hilliard, Ohio 43026

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ *Rachel Sabo Friedmann*

Rachel Sabo Friedmann (0089226)